HESKETT v. THE WABASH, ST. LOUIS & PACIFIC R'Y Co.

1. **Railroads:** DUTY TO CONSTRUCT CATTLE-GUARDS: STATUTE CONSTRUED. Section 1288 of the Code, which requires railway companies to make proper cattle-guards where their roads enter or leave any improved or fenced land, applies to lands which are improved or enclosed *after* the construction of a railroad, as well to those improved or inclosed before.

2. ——: ——: CATTLE-GUARD DEFINED. Where it is the duty of a railway company to construct a cattle-guard at the entrance of an inclosed tract of land, such duty is not performed by digging a pit under the track. The cattle-guard required by the statute is something which will prevent animals from going over the right of way upon the inclosed land, and must extend quite across the right of way.

3. ——: ——: NOTICE. If any notice is required to be given a railway company to construct cattle-guards, where land is inclosed after the railway is built, notice served upon a station agent is sufficient.

<em>Appeal from Wayne District Court.</em>

WEDNESDAY, SEPTEMBER 19.

THIS is an action at law in which the plaintiff seeks, among other things, to recover damages of the defendant, which he alleges occurred to him by reason of the neglect and failure of the defendant to erect and maintain proper cattle-guards where the railroad of the defendant enters and leaves the improved land of the plaintiff. There was a trial by the court without a jury, and a judgment was rendered for the plaintiff. Defendant appeals.

*F. T. Hughes* and *W. H. Tedford*, for appellant.

*W. F. Howell*, for appellee.

ROTHROCK, J.—I.   The learned judge of the district court made certain findings of fact in the case.   The facts found are not in dispute.   From this finding of facts it appears that, when the defendant constructed its railroad, the plaintiff's land (so far as the rights of the parties in this controversy are involved) was unimproved and unfenced.   After the railroad was constructed and in operation, the plaintiff proceeded to enclose his land up to the railroad right of way, and he gave the defendant· notice that he was so doing, and that he desired to have cattle-guards placed at the points where the railroad passed in and out of his land.   A pit was dug by the defendant under the railroad track at one of the points, but at the other no attempt was made to construct any cattle-guard.   The defendant had not fenced its right of way, and by reason of the want of cattle-guards across the railroad track and right of way, the plaintiff's crops were injured by trespassing animals.

The first question made by counsel for appellant is that, where a railroad is constructed across unimproved or uninclosed land, and the land is afterwards improved or inclosed, the law imposes no obligation upon the company operating the railroad to construct cattle-guards.   The obligation to erect cattle-guards by railroad companies is found in section 1288 of the Code, and is as follows:   "Every corporation constructing· or operating a railway shall make proper cattle-guards where the same enters or leaves any improved or fenced land   *   *   *   *   and any railway company neglecting or refusing to comply with the provisions of this section shall be liable for all damages sustained by reason of such neglect and refusal, and in order for the injured party to recover, it shall only be necessary for him to prove such neglect or refusal."

*1. RAILROADS: duty to construct cattle-guards.*

We think it is very clear that this provision of the law is applicable to lands which are improved or inclosed after the construction of a railroad as well as before its construction. Such appears to us to be its plain meaning, and it cannot be

made plainer by argument or illustration.    Besides, the construction contended for by counsel for appellant would, in effect, preclude the inclosure and protection of the wild lands through which many of the railroads in the state are now in operation.   By omitting to fence the right of way, (which a railroad company may lawfully do,) and by failure to make cattle-guards, the lands through which a railroad passes could not be inclosed.

II.   The plaintiff inclosed his entire land up to the right of way, and the district court held that the plaintiff had no right to fence further, or across the right of way, and that the defendant's obligation to make proper cattle-guards was not performed by merely digging a pit under the railroad track.   In other words, the court held that it was the duty of the defendant, not only to make a pit under its track, but to guard the whole width of its right of way by suitable fences, or other protection.

2. ——: ——: cattle-guard defined.

The appellant combats this conclusion of law, and insists that defendant was not required to fence across its right of way, "and connect its pit with the adjoining enclosure." Whether this obligation exists must, we think, be determined by the rights which the respective parties have in the right of way taken for the purposes of the railroad.   The railroad company is the owner of its right of way, at least so long as it is used for railroad purposes.   "It may, within its location, erect buildings required in its business, or allow others to erect them, use the materials found within it, as stone, gravel and timber, in the construction of its line; remove dwelling houses from it, erect fences along the track which will exclude adjoining owners from crossing.   It may use its location for purposes of its railroad, and is itself the judge of the exigency requiring such use. "Pierce on Railways, 159–161; and see *Hougan v. The Milwaukee & St. Paul Railroad*, 35 Iowa, 558.   Under our statute, the above enumeration of rights in the land taken for railroad purposes is qualified by the farm crossings provided by law.   With this exception,

the owner of the adjoining lands has no right to enter upon the right of way without the consent of the railway company. Now, when the plaintiff in this case erected his fences to the line of the right of way, he had no right to build upon the right of way without the consent of the defendant, and, with such consent, he was under no obligation to do so. He could not be required to inclose his land in separate fields by fencing along the right of way, because the law requires suitable cattle-guards put in for the very purpose of effecting a single inclosure on both sides of the right of way. The term cattle-guards has no peculiar signification. In the sense in which it is employed in the statute, it means such an appliance as will prevent animals from going upon the land adjoining the right of way. A pit under the track does not meet the requirement of the law. We think a proper cattle-guard, under the facts of this case, imports a guard or protection, extending the whole width of the right of way.

III. Lastly, it is contended that no proper notice was given to the defendant to make the cattle-guards. It appears 3. ——; ——; notice. from the findings of fact that a written notice was served on the defendant's station agent at Corydon, in Wayne county, that the plaintiff was fencing his land and wanted cattle-guards "placed at both ends of the defendant's road, where it passed in and out of his land. This notice was sufficient. Service of an original notice in an action against a railroad company may be made upon any station or ticket agent in the county. Code, § 2611. The statute does not in terms require a notice to erect cattle-guards to be given to the company. Whether such notice is necessary we need not determine. If it is required, surely notice upon an agent, upon whom service of an original notice in an action may be made, is sufficient.

AFFIRMED.