LAKE SHORE & MICHIGAN SOUTHERN RAILWAY CO. v. JOHNSON.

1. LANDLORD AND TENANT—ESTOPPEL—ADVERSE POSSESSION.
   An occupant of land for upwards of 40 years may set up his adverse possession against the other party to an agreement which was signed by his predecessors in title, then in possession of the disputed premises under a valid claim of title, and which provided for a surrender of possession upon 60 days' notice.

2. SAME.
   Estoppel arises between landlord and tenant by reason of indentures under seal or possession given; following *Fuller* v. *Sweet*, 30 Mich. 237; *Michigan Cent. R. Co.* v. *Bullard*, 120 Mich. 416.

3. REAL PROPERTY—ADVERSE POSSESSION—LIMITATIONS.
   Continued occupation of premises for 40 years, coupled with the payment of taxes and express refusal to recognize plaintiff's rights, is notice of the adverse claim.

Error to Lenawee; O'Mealey, J. Submitted May 4, 1909. (Docket No. 125.) Decided May 26, 1909.

Ejectment by the Lake Shore & Michigan Southern Railway Company against Harry Johnson and Sarah E.

Johnson. A judgment for plaintiff on a verdict directed by the court is reviewed by defendants on writ of error. Reversed.

*Smith, Baldwin & Alexander*, for appellants.

*Herbert R. Clark*, for appellee.

BROOKE, J. This is a suit in ejectment brought by the plaintiff against the defendants for the following premises:

"All that portion of lots 2 and 3 of Gibbon's survey of the village (now city) of Hudson, county of Lenawee and State of Michigan, bounded on the north by a line parallel with and 50 feet northerly of the center of the railway track of said plaintiff across said lots; on the east by the east line of said lot 3; on the south by a line parallel with and 15 feet northerly of the center of said track; and on the west by the west line of said lot 2. Excepting therefrom a strip of land 8.5 feet in width, situated in the northwesterly corner of the land above described, and southerly of and adjoining the northerly line thereof, and extending from the westerly line of said lot 2 to a point distant $2\frac{1}{2}$ feet easterly from the easterly side of the dwelling house of said Harry Johnson and Sarah E. Johnson, which said premises, except the strip of land last described, the plaintiff claims in fee."

The plaintiff offered in evidence a paper writing as follows:

"Whereas, the Lake Shore & Michigan Southern Railway Company has, for my accommodation and at my special request, permitted me to erect a fence inside of its track and outside of my boundary lines, on its railroad in the following place or town, viz., across a part of lot 1 and across lots 2 and 3, and also across a part of lot 4 in block 3 of Gibbon's survey of the village of Hudson in the State of Michigan, as now occupied by me, viz., inclosing all that part of said lots and parts of lots which lie south of a line north of and parallel with and 50 feet distant from the center of the railway track, and which is the property of said railway company, to enable me to cultivate and enjoy the use of said premises so inclosed so long as they are not required for the use of the said railway company at such place, and thus avoid much expense for ground rent, alteration of grade, fence, purchase, etc.

"Now, therefore, in consideration of the premises, I do covenant for myself, my assigns, heirs, executors, and administrators, to and with such railway company that I will remove any buildings, fences, trees, or other obstacles upon these lots from the grounds of said company within sixty days after I or they shall be notified in writing by said company so to do, and I hereby expressly waive greater or longer notice, and if I or my assigns, heirs, executors or administrators shall fail to remove said buildings, fences, trees, and whatever else may be upon the railway company's ground within sixty days after being notified so to do as aforesaid, then and in that case said buildings, fences, and everything else whatever upon said grounds shall be henceforth forfeited to and become the property of said railway company, and it shall and may be lawful for said company, or their certain attorney, to enter into said buildings and to repossess said premises and remove and put out each and every occupant thereof.

"In witness whereof I have hereunto set my hand this 24th day of April, A. D. 1871.

[Signed]    "Phœbe J. Moore.<br>"John G. Moore."

The plaintiff was not able to show the execution of the foregoing paper by the Moores. It was not acknowledged nor recorded. It is the claim of the defendants that it should have been excluded. No other evidence of title in the plaintiff to the premises in dispute was offered by plaintiff. Testimony on behalf of the defendants was introduced tending to show that the fence now standing between the railway and the defendants' house was standing upon exactly the same line which it had occupied for upwards of 40 years. The conveyance from Anna M. Avery to Phœbe J. Moore, dated September 28, 1870, describes the property conveyed as follows:

"Lots 2 and 3 and 28 feet off of the south end of lot 11, on block 3, according to Gibbon's survey, in the village of Hudson, being all the ground now inclosed by fence around the said described premises in the village of Hudson, Lenawee county, Michigan."

It will be noticed that this deed bears date a year earlier than the agreement between Phœbe J. Moore and the

plaintiff, and it cannot be doubted that the fence referred to inclosing the described premises was then in the same locality it is at the present time. The deed from Phœbe J. Moore to Russell J. Packard, dated April 7, 1874, contains in its description the following:

"Also all that part of the west part of said lot 2 now inclosed by the fences around the above described premises."

The deed from Packard to the defendants is in the same terms. It is apparent from the foregoing that at the time the attornment was made by Phœbe J. Moore and John G. Moore they were already in possession of the premises in question, and that their grantor, Anna M. Avery, had likewise been in possession of the same prior to that time.

It is the claim of the plaintiff, and the learned circuit judge evidently reached the same conclusion, that the agreement referred to amounted in a legal sense to a lease as to the disputed strip, so that the Johnsons, the present owners, claiming title through Phœbe J. Moore, the signer of the paper, would be estopped from setting up a title to the same by an adverse possession, and, further, that this relation would relieve the plaintiff from proving title in any other manner. We think that in this the learned circuit judge was in error. This court said in *Fuller* v. *Sweet*, 30 Mich. 237 (18 Am. Rep. 122):

"Where a person in possession agrees by parol to pay money to a person out of possession, and who has no title, it is impossible to find any sensible ground for sustaining such a promise which would not sustain any other promise made without consideration. Where there is an indenture, there is at common law a presumed consideration. Where there is possession given, there is an actual consideration, which may render it also reasonable enough, under ordinary circumstances, to require the landlord to be put back *in statu quo*. But a person who never had or gave up possession to the tenant is left *in statu quo* by the tenant's remaining in possession, and in reason should have no further claim. If he has, it must be by some peculiar anomalous rule, for which we have found no support.

*  *  *  Accordingly it has been regarded as competent in all cases where the tenant has not received possession from the party who claims rent to authorize the claimant's title to be investigated, unless there is some other ground of estoppel "—citing many cases.

Again, in *Michigan Cent. R. Co.* v. *Bullard*, 120 Mich. 416 (79 N. W. 635), Mr. Justice MONTGOMERY, speaking for the court, said:

"An estoppel of the tenant arises out of indentures under seal, or from possession given, whereby an advantage is derived by the tenant from the act of the landlord. But, where one in possession agrees by parol or by an instrument not under seal to rent, there is no just ground for denying the right of such tenant to show that the agreement was made under a mistake of fact, that the title to the property was in himself, and the lease therefore without consideration. *Fuller* v. *Sweet*, 30 Mich. 237 (18 Am. Rep. 122); 2 Taylor on Landlord & Tenant, § 707, and cases cited in note."

Under the foregoing authorities, the defendants had a right to set up their title to the disputed strip as against the company. The record discloses the fact that they bought the premises under a deed which conveyed to them the strip in question in 1884, and that they have continued in the actual daily possession of the whole of it since that time under a claim of ownership. The record further discloses that the railroad company has, from time to time during the possession by the defendants, endeavored to secure a recognition of plaintiff's rights in the disputed strip. Defendants have at all times refused to acknowledge any right of the plaintiff in the premises. We think the continued occupation of the premises by the defendants and their predecessors in title of the premises in question as a home, coupled with the payment of taxes thereon for upwards of 40 years, was notice to the plaintiff of the adverse claim.

The judgment is reversed, and a new trial ordered.

BLAIR, C. J., and MONTGOMERY, HOOKER, and MCALVAY, JJ., concurred.